**2017 CVC-H 000097 - WESTERN RESERVE MUTUAL CASUALTY COMPANY vs. REVERSE MORTGAGE SOLUTIONS, INC.**

## SUMMARY

| | | | |
|---|---|---|---|
| **Judge:** SPITLER, COREY E | **Case Type:** OTHER CIVIL | **Status:** OPEN | |
| **Case Number:** 2017 CVC-H 000097 | **Uniform Case Number:** 002017CVC000097XXXXX | | |
| **Clerk File Date:** 3/1/2017 | **Status Date:** 3/1/2017 | | |
| **SAO Case Number:** | **Total Fees Due:** 51.24 | | |
| **Agency:** | **Agency Report #:** | **Custody Location:** | |

## PARTIES

| TYPE | PARTY NAME | ADDRESS | ATTORNEY |
|---|---|---|---|
| PLAINTIFF | WESTERN RESERVE MUTUAL CASUALTY COMPANY | 1685 CLEVELAND ROAD WOOSTER, OH 44691 | FARNAN, JOHN GERARD (Main Attorney) |
| DEFENDANT | REVERSE MORTGAGE SOLUTIONS, INC. | C/O STATUTORY AGENT: CT CORP. SYSTEM MR. CHRIS RICKARD 4400 EASTON COMMONS WAY SUITE 125 COLUMBUS, OH 43219 | |
| DEFENDANT | COLLINS, WILLIAM | 101 WILLOW ROAD GREENFIELD, IN 46140 | |
| DEFENDANT | GREENFIELD BANKING COMPANY | 1920 NORTH STATE ST. GREENFIELD, IN 46140 | |
| JUDGE | SPITLER, COREY E | Courtroom #2 107 W. Liberty Street Wooster, OH 44691 | |
| DEFENDANT | REVERSE MORTGAGE SOLUTIONS, INC. | C/O STATUTORY AGENT: CT CORP. SYSTEM MR. CHRIS RICKARD 4400 EASTON COMMONS WAY SUITE 125 COLUMBUS, OH 43219 | |
| DEFENDANT | COLLINS, WILLIAM | 101 WILLOW ROAD GREENFIELD, IN 46140 | |
| DEFENDANT | GREENFIELD BANKING COMPANY | 1920 NORTH STATE ST. GREENFIELD, IN 46140 | |
| PLAINTIFF | WESTERN RESERVE MUTUAL CASUALTY COMPANY | 1685 CLEVELAND ROAD WOOSTER, OH 44691 | FARNAN, JOHN GERARD (Main Attorney) |
| ATTORNEY | FARNAN, JOHN GERARD | THE TOWER AT ERIEVIEW 1301 E. 9TH ST., STE 1900 CLEVELAND, OH 44114-1862 | |
| JUDGE | SPITLER, COREY E | Courtroom #2 107 W. Liberty Street Wooster, OH 44691 | |

## EVENTS

| DATE | EVENT | JUDGE | LOCATION | RESULT |
|---|---|---|---|---|
| | | No Events on Case | | |

## CASE HISTORY

| CASE NUMBER | CHARGE DESCRIPTION | CASE STATUS | DISPOSITION | OUTSTANDING AMOUNT | NEXT EVENT | ALERTS |
|---|---|---|---|---|---|---|
| | | | No Additional Cases | | | |

## CASE NOTES

| DATE | NOTE ENTRY | | CREATED BY |
|---|---|---|---|
| | | (0) Case Notes | |

## CASE DOCKETS

| IMAGE | DATE | ENTRY |
|---|---|---|
| 1 | 3/15/2017 | ELECTRONIC CERTIFIED MAIL RETURNED FOR: GREENFIELD BANKING CO SIGNED FOR BY: ILLEGIBLE |
| 1 | 3/15/2017 | ELECTRONIC CERTIFIED MAIL RETURNED FOR: MR WILLIAM COLLINS SIGNED FOR BY: BILL COLLINS |
| 1 | 3/15/2017 | ELECTRONIC CERTIFIED MAIL RETURNED FOR: REVERSE MORTGAGE SOLUTION C/O STATUTORY AGENT CT CORP. CHRIS RICKARD SIGNED FOR BY: ILLEGIBLE |
| | 3/2/2017 | COPIES FEE ASSESSED $18.60 |
| 3 | 3/2/2017 | CERT MAIL SENT FEE ASSESSED $23.64 |
| | 3/2/2017 | SUMMONS ISSUED BY CERTIFIED MAIL FEE ASSESSED $9.00 |
| 1 | 3/2/2017 | SUMMONS ISSUED |
| 1 | 3/2/2017 | SUMMONS ISSUED |
| 1 | 3/2/2017 | SUMMONS ISSUED |
| 1 | 3/2/2017 | PAYMENT $313.00 RECEIPT #2017006733 |
| 1 | 3/2/2017 | PRECIPE FOR SERVICE |
| | 3/2/2017 | ATTORNEY: FARNAN, JOHN GERARD ASSIGNED TO WESTERN RESERVE MUTUAL CASUALTY COMPANY |
| | 3/2/2017 | JUDGE SPITLER, COREY E: ASSIGNED |
| | 3/2/2017 | WAYNE COUNTY CASE#: 2017 CVC 000097 M |
| | 3/1/2017 | CIVIL COMPLAINT FILED FEE ASSESSED $277.00 |
| | 3/1/2017 | CIVIL DEPOSIT FEE ASSESSED $36.00 |
| | 3/1/2017 | EXHIBITS |
| 9 | 3/1/2017 | CIVIL COMPLAINT FILED |

| IMAGE | DATE | ENTRY |
|---|---|---|
| 2 | 3/1/2017 | PAYMENT $0.00 RECEIPT #2017006712 |
| | 3/1/2017 | CASE FILED 03/01/2017 CASE NUMBER 2017 CVC-H 000097 |

 **CT Corporation**

**Service of Process Transmittal**
03/07/2017
CT Log Number 530816958

**TO:** Ron Camacho
Reverse Mortgage Solutions, Inc./Security 1 Lending
14405 Walters Road, Suite 200
Houston, TX 77014

**RE:** **Process Served in Ohio**

**FOR:** Reverse Mortgage Solutions, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Western Reserve Mutual Casualty Company, Pltf. vs. Reverse Mortgage Solutions, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Attachment(s) |
| **COURT/AGENCY:** | Wayne County Court of Common Pleas, OH Case # 2017CVCH000097 |
| **NATURE OF ACTION:** | Complaint for declaratory judgment, indemnity, contribution and restitution |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Cleveland, OH |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 03/07/2017 postmarked on 03/02/2017 |
| **JURISDICTION SERVED :** | Ohio |
| **APPEARANCE OR ANSWER DUE:** | Within 28 days after service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | John Gerard Farnan Weston Hurd, LLP 1301 E. 9th St. Ste 1900 The Tower at Erieview Cleveland, OH 44114-1862 216-241-6602 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via UPS Next Day Air , 1Z0399EX0109864856 |
| | Image SOP |
| | Email Notification, Ron Camacho Ron.Camacho@rmsnav.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 4400 Easton Commons Way Suite 125 Columbus, OH 43219 |
| **TELEPHONE:** | 614-280-3338 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.





**CERTIFIED MAIL**

**TIM NEAL**
**WAYNE COUNTY CLERK OF COURTS**
**107 WEST LIBERTY STREET**
**WOOSTER, OH 44691**

91 7199 9991 7034 6728 5811

U.S POSTAGE >> PITNEY BOWES

ZIP 44691
02 1M          $ 007.88⁰
0001395491 MAR 02 2017

**SCANNED**

REVERSE MORTGAGE SOLUTIONS, INC.
C/O STATUTORY AGENT: CT CORP. SYSTEM MR.
CHRIS RICKARD
4400 EASTON COMMONS WAY SUITE 125
COLUMBUS, OH 43219
Case #2017 CVC-H 000097

REVERSE MORTGAGE SOLUTIONS, INC.
C/O STATUTORY AGENT: CT CORP. SYSTEM MR.
CHRIS RICKARD
4400 EASTON COMMONS WAY SUITE 125
COLUMBUS, OH 43219
 Case #2017 CVC-H 000097

**WAYNE COUNTY COMMON PLEAS COURT**
**CIVIL DIVISION**
107 WEST LIBERTY STREET
WOOSTER, OHIO 44691
(330) 287-5590
**SUMMONS**

WESTERN RESERVE MUTUAL CASUALTY
COMPANY

        Plaintiff

vs.

REVERSE MORTGAGE SOLUTIONS, INC., et al
        Defendant

CASE NO. 2017 CVC-H 000097

To: **REVERSE MORTGAGE SOLUTIONS, INC.**
C/O STATUTORY AGENT: CT CORP. SYSTEM MR. CHRIS RICKARD
4400 EASTON COMMONS WAY SUITE 125
COLUMBUS, OH 43219

To the above named defendant(s):

      You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) had been filed against you in this court by the plaintiff(s) named herein. You are required to serve upon the plaintiff's attorney, or upon the plaintiff if he/she has no attorney of record, a copy of your answer to the complaint with 28 days after service of this summons upon you. Said answer must be filed with this court within three days after service on plaintiff's attorney.

The name and address of the plaintiff's attorney is as follows:
        JOHN GERARD FARNAN
        THE TOWER AT ERIEVIEW
        1301 E. 9TH ST., STE 1900
        CLEVELAND, OH 44114-1862
If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

By: _____
      Deputy Clerk

3/2/2017

SummonsCivil

IN THE COURT OF COMMON PLEAS
WAYNE COUNTY, OHIO

| | | |
|---|---|---|
| **WESTERN RESERVE MUTUAL** | ) | CASE NO.: **2017 CVC-H 000097** |
| **CASUALTY COMPANY** | ) | |
| 1685 Cleveland Road | ) | JUDGE    **COREY E SPITLER** |
| Wooster, OH 44691, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **REVERSE MORTGAGE SOLUTIONS, INC.** | ) | **COMPLAINT FOR DECLARATORY** |
| C/O Statutory Agent: | ) | **JUDGMENT, INDEMNITY, CONTRIBUTION** |
| **CT Corporation System** | ) | **AND RESTITUTION** |
| Mr. Chris Rickard | ) | |
| 4400 Easton Commons Way, Suite 125 | ) | |
| Columbus, OH 43219, | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| **MR. WILLIAM COLLINS** | ) | |
| 101 Willow Road | ) | |
| Greenfield, Indiana 46140 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| **GREENFIELD BANKING COMPANY** | ) | |
| 1920 North State St. | ) | |
| Greenfield, IN 46140-0000, | ) | |
| | ) | |
| Defendants. | ) | |

Now comes the Plaintiff, *WESTERN RESERVE MUTUAL CASUALTY COMPANY*, by and through the

undersigned legal counsel, and for its Complaint hereby states and avers as follows:

## THE PARTIES & VENUE

1.)    Western Reserve Mutual Casualty Company (referenced herein as "WRMCC") is an

Ohio corporation duly registered and validly existing under the laws of the State of Ohio and having

its principal offices located within Wayne County, Ohio at 1685 Cleveland Rd, Wooster, OH 44691.

2.)     Reverse Mortgage Solutions, Inc. (referenced herein as "RMS") is a Delaware

Corporation duly and properly registered to transact business as a foreign corporation in the State

of Ohio, bearing Ohio Secretary of State business entity number 1884356.

3.)     RMS is engaged in the business of originating and servicing reverse mortgage loans

and recording mortgage liens against the real property securing said mortgage loans.  RMS

originates and services reverse mortgage loans within the State of Ohio, and RMS duly records

mortgage liens within the State of Ohio to secure said mortgage loans.

4.)     Greenfield Banking Company is an Indiana corporation duly registered and in good

standing with the Office of the Indiana Secretary of State, bearing Indiana Business Identity Number

198110-445.

5.)     Mr. William Collins is an individual believed to be a resident of the State of Indiana

and a former insured of WRMCC.

6.)     Venue is proper in this Court pursuant to Civ.R. 3(B)(6) and/or (7) as Wayne

County, Ohio is the Ohio County in which all or part of the claim for relief arose, and the County in

which the Plaintiff has its principal offices.

<u>**BACKGROUD FACTS**</u>

7.)     RMS provides to borrowers in both the State of Ohio and Indiana a certain reverse

mortgage loan product whereby borrowers age 62 or older obtain regular monthly payments from

RMS in exchange for a corresponding mortgage lien on the borrower's equity in real property.

8.)     Mr. William Collins, upon information and belief, was at all times relevant the owner

of the real property located at 614 N. East Street, Greenfield, Indiana 46140 (referenced herein as

the "Collins Real Property").

9.)     WRMCC issued to Mr. Collins a certain Homeowner's Policy of Insurance for the

policy period of January 24, 2012 through January 24, 2013, which was subsequently renewed for

the policy period of January 24, 2013 through January 24, 2014, bearing Policy Number

2

1301476736-0 (referenced herein as the "Policy") to insure the Collins Real property. *A true and accurate copy of the Policy for the relevant Policy Period is attached hereto as Exhibit "A."*

10.) Defendant RMS claims to have provided to Collins a reverse mortgage loan, of an unspecified amount, which loan was secured by the Collins Real Property.

11.) Within the Policy, RMS was duly and properly named as mortgagee in the Policy's mortgage clause. *Section 10 Conditions, para. K and Homeowner's Amendendatory Endorsement at para. K.*

12.) On or about May 26, 2013, the Collins Real Property was destroyed by fire and Collins filed a claim under the Policy.

13.) WRMCC reviewed and approved certain aspects of the Collins claim. On August 9, 2013 WRMCC issued two separate payments arising from the covered loss, *to wit,* (a) WRMCC issued payment to Collins (as the sole payee) in the amount of $97,305.60 for "Fire Damage to Dwelling Less Recoverable Depreciation, Mortgage Payoff and $500 Policy Deductible," and (b) WRMCC issued a two party check payable to Collins and RMS in the amount of $76,888.11 as the lien payoff for the Collins Real Property (referenced herein as the "Joint Payment Check").

14.) Each of the checks tendered by WRMCC were drawn on the WRMCC FirstMerit account in the State of Ohio, and each of the checks were presented to FirstMerit for payment within the State of Ohio.

15.) Pursuant to UCC 3-110, the Joint Payment Check was made jointly payable to Collins *and* RMS, *to wit,* the Lien Payoff Check specifically states: "Pay to the order of: Bill Collins **and** RMS Inc. ISAOA #111151-641," [emphasis added], thereby requiring endorsement by both payees for the check to be negotiable. The Joint Payment Check was delivered to Defendant Collins.

16.) Upon information and belief, instead of endorsing the Joint Payment Check and tendering the same to RMS, on or about August 12, 2013, Defendant Collins deposited both of the checks issued by WRMCC into his personal bank at Greenfield Banking Company (referenced herein

as "GBC"). Although the Joint Payment Check clearly states that it is payable to "Bill Collins **and** RMS Inc ISAOA #111151-641," the Joint Payment Check does not bear the endorsement of RMS; rather, the only endorsement visible on the back of the Joint Payment Check states "Deposit only xxxxx960."

17.)     After accepting each of the WRMCC issued checks from Collins for deposit into his account, GBC subsequently presented the checks to FirstMerit for payment, which checks were paid.

18.)     Although Defendant RMS had either actual knowledge or constructive knowledge of both the loss to the Collins Real Property and the issuance of payment by WRMCC in 2013, RMS completely failed to make any demands for payment, assert any claims, or otherwise take any action against Defendant Collins and/or Greenfield Banking Company.

19.)     Moreover, RMS also failed to timely make any demand on WRMCC or timely take any action against WRMCC, including commencing suit within the applicable two (2) year statute of limitations as set forth in the Policy. Rather, more than two years after issuance of the checks, on or about February 15, 2017, RMS for the first time sent notice to WRMCC claiming that WRMCC failed to tender payment for the lien payoff as required by the Policy.

## COUNT ONE
### (DECLARATORY JUDGMENT- AS TO ALL PARTIES)

20.)     By this reference the Plaintiff incorporates herein all prior allegations as though fully rewritten.

21.)     A true and justiciable controversy exists by and WRMCC and RMS regarding the validity and enforceability of the terms and conditions of the Policy and WRMCC's duties and obligations to RMS as it relates to Joint Payment Check.

22.) More specifically, pursuant to Conditions- Section 1(G) of the Policy, any claim against WRMCC is subject to a two-year statute of limitations.

23.) WRMCC maintains that this contractual statute of limitations is valid and enforceable, however, RMS claims the contractual statute of limitations is not valid or enforceable.

24.) Wherefore, WRMCC seeks a judicial order declaring the validity and enforceability of the contractual statute of limitations.

25.) Moreover, as to all Parties to this action, WRMCC further seeks a judicial order declaring that:

- WRMCC's delivery of the Joint Payment Check to Collins constitutes delivery to all payee's;

- Collins deposit of the Joint Payment Check and the payment of said check discharges WRMCC's obligations under the Policy pursuant to applicable law; and

- WRMCC has tendered full payment of the lien pay-off amount and has no further obligations under the Policy and/or applicable law.

26.) Further, WRMCC seeks a judicial order declaring that the injuries allegedly sustained by RMS are barred by the doctrine of laches and/or are a direct consequence of RMS's failure to timely act, *to wit*, as a co-payee of the Joint Payment Check, RMS had standing to sue Greenfield Banking Company for conversion and/or failing to exercise ordinary care in the acceptance of the Joint Payment Check.

27.) A claim by RMS against Greenfield Banking Company is governed by a three (3) year limitations period.

28.) Within the applicable three (3) year limitations period, Defendant RMS either had knowledge, or should have known, of the fact that the Joint Payment Check was tendered by WRMCC to Collins, that Collins deposited the Joint Payment Check with either a forged endorsement or a missing endorsement, and Collins received payment for the Joint Payment Check.

5

However, RMS slept on its rights against Greenfield Banking Company and failed to timely assert any claims.

29.) Wherefore, in accordance with the allegations set forth herein, WRMCC seeks a judicial order declaring the Parties respective rights, duties and obligations arising and existing under the Policy and in relation to the Joint Payment Check, and relative to any claims arising therefrom.

30.) WRMCC further seeks any and all additional remedies this Court deems just and appropriate.

**COUNT TWO**
**(INDEMNITY OR, IN THE ALTERNATIVE, CONTRIBUTION- AS AGAINST GREENFIELD BANKING COMPANY)**

31.) By this reference the Plaintiff incorporates herein all prior allegations as though fully rewritten.

32.) The Joint Payment Check was issued by WRMCC to its insured, William Collins and to RMS, to pay-off the RMS lien on the Collins Real Property.

33.) The Joint Payment Check was duly and properly issued by WRMCC and clearly stating on its face that it was issued jointly to both named payees.

34.) For the Joint Payment Check to be properly negotiable it requires the signatures of both of the named payees.

35.) Notwithstanding, GBC accepted from Collins for deposit the Joint Payment Check without the endorsement from RMS.

36.) RMS claims and asserts that the funds from the Joint Payment Check were retained solely by Collins with no portion being tendered to RMS.

37.)     In accepting for deposit the Joint Payment Check without the endorsement of RMS, GBC failed to exercise ordinary care.

38.)     As a direct and proximate result of the conduct of GBC as described herein, RMS has asserted claims against WRMCC for payment of the full amount of the Joint Payment Check, which WRMCC has already paid but such amounts were retained by Collins.

39.)     Should WRMCC be required to tender to RMS all or any portion of the amounts already tendered by way of the Joint Payment Check, GBC is obligated to indemnify WRMCC for all amounts due and owing to RMS.

40.)     In the alternative, GBC is liable in contribution to WRMCC for its pro rata share of the amount for which WRMCC is liable to RMS.

### COUNT THREE
### (UNJUST ENRICHMENT- AS TO COLLINS)

41.)     By this reference the Plaintiff incorporates herein all prior allegations as though fully rewritten.

42.)     WRMCC, pursuant to the terms of the Policy, issued the Joint Payment Check jointly payable to Collins and RMS for purposes of satisfying in full the RMS lien on the Collins Real Property.

43.)     Notwithstanding, Collins deposited and retained the full amount of the Joint Payment Check.

44.)     Collins has retained the proceeds of the Joint Payment Check under circumstances which are unjust.

45.)     Wherefore, WRMCC is due and owing from Collins restitution of the full amount of the Joint Payment Check.

## COUNT FOUR
### (INDEMNITY OR, IN THE ALTERNATIVE, CONTRIBUTION- AS TO COLLINS)

46.)    By this reference the Plaintiff incorporates herein all prior allegations as though fully rewritten.

47.)    The Joint Payment Check was issued by WRMCC to its insured, William Collins and to RMS, to pay-off the RMS lien on the Collins Real Property.

48.)    The Joint Payment Check was duly and properly issued by WRMCC and clearly stated on its face that it was issued jointly to both named payees.

49.)    For the Joint Payment Check to be properly negotiable it required the signatures of both of the named payees.

50.)    Notwithstanding, RMS claims and asserts that the funds from the Joint Payment Check were retained solely by Collins with no portion being tendered to RMS.

51.)    As a direct and proximate result of the conduct of Collins as described herein, RMS has asserted claims against WRMCC for payment of the full amount of the Joint Payment Check, which WRMCC has already paid and which have been retained by Collins.

52.)    Should WRMCC be required to tender to RMS all or any portion of the amounts already tendered by way of the Joint Payment Check, Collins is obligated to indemnify WRMCC for all amounts due and owing to RMS.

53.)    In the alternative, Collins is liable in contribution to WRMCC for its pro rata share of the amount for which WRMCC is liable to RMS.

*Wherefore,* having fully set forth its claims, Western Reserve Mutual Casualty Company hereby demands judgment in its favor and against the Defendants as follows:

A.      For a judicial order declaring the Parties respective rights, duties and obligations under the Policy, as to the Joint Payment Check, and relative to any claims arising or relating thereto, including but not limited to the validity and enforceability of the two year statute of limitations and extinguishment of the RMS obligation.

B.      Indemnity or contribution from Collins and/or GBC should WRMCC be found liable to issue payment to RMS for any portion of the lien pay-off;

8

C.     For restitution from Collins for the amount of the Joint Payment Check, and

D.     To the extent permitted, the Plaintiff's legal fees and the costs of this action, and

E.     Any other relief this Court deems just and appropriate.

Respectfully submitted,

*/s/Scott J. Orille*
JOHN G. FARNAN (0038558)
Jfarnan@westonhurd.com
MONICA L. FRANTZ (0090878)
Mfrantz@westonhurd.com
SCOTT J. ORILLE (0069192)
SOrille@westonhurd.com
WESTON HURD, LLP
The Galleria & Towers at Erieview
1301 East Ninth Street, Suite 1900
Cleveland, OH 44114
Telephone:  216-241-6602
Facsimile:  216-621-8369


*/s/David L. Jarrett*
DAVID L. JARRETT (0061532)
Dave_Jarrett@wrg-ins.com
Western Reserve Group
1685 Cleveland Road
Wooster, OH 44691-0036
(T) 1-800-362-0426 ext. 3515

Attorneys for Plaintiff

9

**AGENCY - IN - 31220**
**BUTLER INSURANCE AGENCY INC**
**GREENFIELD      IN**
**317-462-6900**



To report a claim on weekends, holidays or after hours
(5:00 p.m. to 8:00 a.m.), please contact your agent or WRG's
After Hour Claim Service at 1-800-362-0426

**HOMEOWNERS POLICY NUMBER**

WSH 1301476736-0

**COLLINS, BILL**
**614 N EAST ST**
**GREENFIELD, IN    46140-1617**

*THE WESTERN RESERVE GROUP* is pleased to serve your insurance needs.

*PLEASE READ CAREFULLY* this letter and your enclosed policy including the Declarations, any coverage forms or endorsements, special state notices or advisories. If you have questions about your insurance, need to make changes to your policy, or desire information about other Western Reserve Group products, please contact your agent.

---

*THE FOLLOWING DISCOUNTS APPLY TO YOUR POLICY...and reduce your premium!*

**Multi-Policy Discount**

**Protective Device**

---

Billing statements will be mailed separately. Please pay from those statements rather than from this policy.

- Western Reserve Group offers the convenience of Electronic Funds Transfer for most Personal and Farm insurance products. Choose this payment option and you could save money.

- Visit our Website at www.wrg-ins.com for information regarding our company and the products we offer.

- Insuring your current Home policy along with an Automobile or Umbrella policy with us qualifies you for a Multi-Policy Discount. Please contact your agent to discuss the potential savings.

*THANK YOU* for choosing *Western Reserve Group!* Your business is appreciated.

**HOCOVER 10 10**

EXHIBIT A

MUT PROV 11 05

# MUTUAL PROVISIONS

**NOTICE OF POLICYHOLDERS MEETINGS**

The annual meetings of the members for the Western Reserve Group are held on the last Friday of March of each year at our Home Office, 1685 Cleveland Road, Wooster, Ohio, at the times shown below:

| | |
|---|---|
| 10:00 a.m. | Western Reserve Mutual Casualty Company |
| 11:00 a.m. | Sonnenberg Mutual Insurance Company |
| 2:00 p.m. | Lightning Rod Mutual Insurance Company |

While your policy is in force, you are one of our members and are entitled, in person or in proxy to one vote at all meetings of the members. You may vote by proxy, but in order for the proxy to be valid in any meeting, it must be filed with the Secretary at least thirty (30) days prior to the date of the meeting at which your proxy is to be voted.

Nominations for Directors shall be filed with the Secretary at least sixty (60) days prior to the Annual Meeting.

Lightning Rod Mutual Insurance Company
Western Reserve Mutual Casualty Company
Sonnenberg Mutual Insurance Company

*John P. Murphy*

**President-Secretary**



**The Western Reserve Group**
**Privacy Policy**
Western Reserve Mutual Casualty Company
Lightning Rod Mutual Insurance Company
Sonnenberg Mutual Insurance Company

The privacy of your personal information is a corporate priority and important to us. We collect personal information about you for the purpose of underwriting insurance policies, payment of claims and to help us provide a better level of service. We will protect the security and confidentiality of the personal information we collect. The privacy policy of Western Reserve Mutual Casualty Company, Lightning Rod Mutual Insurance Company, and Sonnenberg Mutual Insurance Company, collectively known as the Western Reserve Group, is presented below.

### The Personal Information Privacy Policy of the Western Reserve Group

Information that personally identifies you or your accounts is personal information.

We do not disclose personal information to third parties, except as required or permitted by applicable law, regulation or your prior authorization. For example, we:

- Share claim history with consumer reporting agencies.
- Provide limited personal information to independent claims adjusting firms, experts and attorneys to assist in processing insurance claims.
- Obtain medical reports related to injury claims with your prior authorization.
- Share payment history with collection agencies on delinquent accounts.

## We do not sell your personal information to anyone.

We obtain non-public personal information about you from the following sources:

- Information we receive from you, such as information on applications and other forms, that may include your name, address, payment authorization and social security number.
- Information about your transactions with us such as amounts owed and payment history.
- Information we receive from consumer reporting agencies for example motor vehicle reports, credit reports, insurance score and claim history.

We continue to evaluate our efforts to protect personal information and make every effort to keep your personal information accurate and up to date.

- Please contact us if you identify any inaccuracy in your personal information.

We restrict access to non-public personal information about you to those employees, agents, and other parties who need this information to provide products and services to you. We maintain physical, electronic, and procedural safeguards to guard your non-public personal information.

We will provide notice of changes in our information-sharing practices.

- If at any time in the future it is necessary to disclose any of your personal information in a way that is inconsistent with the above stated policy, we will give you advance notice of the proposed change so that you will have the opportunity to opt out of such disclosure.
- If you have any questions or concerns, please write us at:

Western Reserve Group
1685 Cleveland Road
Wooster, Ohio 44691

PRIVPOL 0601

**NFIP-IN 01 02**

# WESTERN RESERVE GROUP

Lightning Rod Mutual Insurance Company          Western Reserve Mutual Casualty Company

## IMPORTANT NOTICE – PLEASE READ THIS CAREFULLY

Your policy does not provide coverage for damage caused by flood.

Indiana Insurance Code requires us to inform you that coverage to protect your property from flood damage may be available from the National Flood Insurance Program for:

(1) real property consisting of not more than four (4) residential units, one (1) of which is the principal place of residence of the named insured; or

(2) personal property:
   A)  in which the named insured has an insurable interest; and
   B)  that is used within a residential dwelling for personal, family or household purposes.

**If you wish to obtain more information about purchasing flood insurance, please contact your agent.**

If your agent does not write flood insurance, you may call the National Flood Insurance Program toll free at 1-888-CALL FLOOD for the name of an agent near you who writes flood insurance in Indiana. Information regarding the National Flood Insurance Program is also available on line from the Federal Emergency Management Agency at www.fema.gov/nfip/.

Includes copyrighted material from Insurance Services Office, with its permission
Copyright, ISO Properties, Inc., 2001

NFIP-IN 01 02



## NOTICE TO POLICYHOLDERS
## REGARDING FILING COMPLAINTS WITH THE
## DEPARTMENT OF INSURANCE

**Questions regarding your policy or coverage should be directed to:**

**WESTERN RESERVE GROUP**
**Lightning Rod Mutual Insurance Company**
**Western Reserve Mutual Casualty Company**
**Sonnenberg Mutual Insurance Company**

**Telephone: (765) 482-0642**

If you (a) need the assistance of the governmental agency that regulates insurance; or (b) have a complaint you have been unable to resolve with your insurer you may contact the Department of Insurance by mail, telephone or email:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

---

**1402 W. Main St., Lebanon IN  46052 * FAX (800) 555-1841**
POLNOT 0805

POLNOT



# Western Reserve Group

Western Reserve Mutual Casualty Company • Lightning Rod Mutual Insurance Company
Sonnenberg Mutual Insurance Company
Wooster, Ohio

**WESTERN RESERVE MUTUAL CASUALTY**

**HOMEOWNERS POLICY**

| | | |
|---|---|---|
| 31220 999 | **BUTLER INSURANCE AGENCY INC** **GREENFIELD** IN (317) 462-6900 **DECLARATIONS** | **POLICY NUMBER** **WSH 1301476736-0** |

**POLICY PERIOD**
12:01 A.M. Standard Time At The Residence Premises
FROM: **01-24-2012** TO: **01-24-2013**

ACCOUNT # **577209662**

NAMED INSURED AND ADDRESS

**COLLINS, BILL**
**614 N EAST ST**
**GREENFIELD, IN**      **46140-1617**

EFFECTIVE DATE OF AMENDMENT

LEGAL DESCRIPTION/LOCATION OF RESIDENCE PREMISES IF OTHER THAN ABOVE.
(NO., STREET, CITY, STATE, ZIP)

**614 N EAST ST**
**GREENFIELD, IN**      **46140**

PREVIOUS POLICY NUMBER

**TO BE PAID BY NAMED INSURED**

## COVERAGES AND LIMITS OF LIABILITY

| SECTION I | | | | SECTION II | |
|---|---|---|---|---|---|
| A. DWELLING | B. OTHER STRUCTURES | C. PERSONAL PROPERTY | D. LOSS OF USE | E. PERSONAL LIABILITY Each Occurrence | F. MEDICAL PAYMENTS TO OTHERS Each Person |
| $ 214,000 | $ 21,400 | $ 160,500 | $ 64,200 | $ 300,000 | $ 1,000 |

**DEDUCTIBLE**
The Section I deductible does not replace
nor waive any coverage specific deductible.

SECTION I      $   500

WIND OR HAIL   $  1,000

**BASIC PREMIUM**   $   942.00

**OTHER COVERAGES AND ENDORSEMENTS**
    Form and Endorsements are printed on the following page.

**ENDORSEMENT PREMIUM**   $   87.00

**TOTAL POLICY PREMIUM**   $ 1,029.00

**15% MULTI-POLICY DISC**

**THIS IS NOT A BILL. STATEMENT TO FOLLOW.**

HODECS 10-10

THIS POLICY CONSISTS OF THE DECLARATIONS PAGE, POLICY FORMS, ENDORSEMENTS, AND YOUR REPRESENTATIONS ON THE APPLICATION.

SEE REVERSE SIDE FOR MORTGAGEE/OTHER PAYOR/LOSS PAYEE.

Authorized Representative

DIRECT BILL   V50   12037                INSURED COPY                577209662   02   01309

01310



# Western Reserve Group

Western Reserve Mutual Casualty Company • Lightning Rod Mutual Insurance Company
Sonnenberg Mutual Insurance Company
Wooster, Ohio

**WESTERN RESERVE MUTUAL CASUALTY**

**HOMEOWNERS POLICY**

| 31220 999 | BUTLER INSURANCE AGENCY INC | |
|---|---|---|
| | GREENFIELD       IN | (317) 462-6900 |
| | **DECLARATIONS** | |

**POLICY NUMBER**
WSH 1301476736-0

**POLICY PERIOD**
12:01 A.M. Standard Time At The Residence Premises
FROM: 01-24-2012    TO:01-24-2013

**ACCOUNT #**    577209682

NAMED INSURED AND ADDRESS:
**COLLINS, BILL**

**614 N EAST ST**

**GREENFIELD, IN**                    **46140-1617**

EFFECTIVE DATE OF AMENDMENT

THE DECLARATIONS AND PREMIUMS FOR THE FORMS AND ENDORSEMENTS MADE A PART OF THIS POLICY ARE LISTED BELOW. ANY DESCRIPTION PROVIDED HEREIN DOES NOT REPLACE, AMEND, OR ALTER ANY POLICY TERMS, EXCLUSIONS, OR CONDITIONS. REFER TO THE ACTUAL FORMS AND ENDORSEMENTS FOR APPLICABLE POLICY PROVISIONS INCLUDING ANY COVERAGE SPECIFIC DEDUCTIBLE.

| | | DESCRIPTION OF COVERAGE | LIMIT | PREMIUM |
|---|---|---|---|---|
| HO0003 | 10 00 | Homeowners 3 Special Form | | |
| HM0140 | 10 11 | Homeowners Amendatory Endorsement | | |
| HO0113 | 03 11 | Special Provisions-Indiana | | |
| HO1610 | 01 09 | Water Exclusion Endorsement | | |
| HO0427 | 04 02 | Limited Fungi, Wet Or Dry Rot/Bacteria | | |
| HO0498 | 10 00 | NO Sect II - Liability Home Day Care | | |
| | | LIMITED Sect I - Property Home Day Care | | |
| HO0416 | 10 00 | Premises Alarm Or Fire Protection System | | 29.00- |
| HM0136 | 10 11 | Homeowners Enhancement | | 116.00 |
| | | Functional Replacement Cost Dwelling | | |
| | | Personal Property Replacement Cost | | |
| | | Refrigerated Property | 500 | |
| | | Increased Special Limits Coverage C | | |
| | | Money | 500 | |
| | | Jewelry | 5,000 | |
| | | Silverware | 5,000 | |
| | | Credit Card, Fund Transfer Card, Forgery | 2,000 | |
| | | Lock Replacement Coverage | 500 | |
| | | Extended Liab Coverage For Golf Carts | | |
| | | Personal Injury | | |
| | | Watercraft Liab (up to 50 hp & < 26 ft) | | |

HODECE 1049

THIS POLICY CONSISTS OF THE DECLARATIONS PAGE, POLICY FORMS, ENDORSEMENTS AND YOUR REPRESENTATIONS ON THE APPLICATION.

DIRECT BILL    V50    12037                    INSURED COPY                    577209662    02    01311

01312

WSH 13014767360

HOMEOWNERS
HO 00 03 10 00

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

   (1) Ownership of such vehicle or craft by an "insured";

   (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

   (3) Entrustment of such vehicle or craft by an "insured" to any person;

   (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

   (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

   (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

   (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

   (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

   (4) Motor vehicle means a "motor vehicle" as defined in 7. below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

   (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

   (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

   (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

   (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

   (1) Your relatives; or

   (2) Other persons under the age of 21 and in the care of any person named above;

   b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

   (1) 24 and your relative; or

   (2) 21 and in your care or the care of a person described in a.(1) above; or

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

c. Under Section II; WSH 13014767360

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in a. or b. above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to a "motor vehicle" to which this policy applies:

(a) Persons while engaged in your employ or that of any person included in a. or b. above; or

(b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in a. and b. above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one family dwelling where you reside;

b. The two, three or four family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

HO 00 03 10 00
02  01314

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### C. Coverage C – Personal Property

1. Covered Property

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. Limit For Property At Other Residences

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. Special Limits Of Liability

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

HO 00 03 10 00
WSH 13014767360

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

Page 3 of 22
02 01315

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories j. and k. below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category j.

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category k.

4. Property Not Covered

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

(1) This includes:

(a) Their accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in (a) and (b) above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service an "insured's" residence; or

(b) Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in E.10. Landlord's Furnishings under Section I — Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage D is the total limit for the coverages in 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in 1. Additional Living Expense and 2. Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2. Reasonable Repairs

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

HO 00 03 10 00

WSH 13014767360

Copyright, Insurance Services Office, Inc., 1999

INSURED COPY

Page 5 of 22

02  01317

b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or

(2) Relieve you of your duties, in case of a loss to covered property, described in B.4. under Section I – Conditions.

## 3. Trees, Shrubs And Other Plants

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious Mischief; or

g. Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

## 4. Fire Department Service Charge

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

## 5. Property Removed

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

## 6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money

a. We will pay up to $500 for:

(1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

(2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

(3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

(4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

b. We do not cover:

(1) Use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household;

(b) By a person who has been entrusted with either type of card or access device; or

(c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

(2) Loss arising out of "business" use or dishonesty of an "insured".

c. If the coverage in a. above applies, the following defense provisions also apply:

(1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2) If a suit is brought against an "insured" for liability under a.(1) or (2) above, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under a.(3) above.

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

HO 00 03 10 00
02 01318

### 7. Loss Assessment

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A, other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Paragraph P. Policy Period under Section I — Conditions does not apply to this coverage.

This coverage is additional insurance.

### 8. Collapse

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage C;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

### 9. Glass Or Safety Glazing Material

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

Copyright, Insurance Services Office, Inc., 1999

INSURED COPY

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in a.(2) above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage C, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage C.

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B – Other Structures**

1. We insure against risk of direct physical loss to property described in Coverages A and B.

2. We do not insure, however, for loss:

a. Excluded under Section I – Exclusions;

b. Involving collapse, except as provided in E.8. Collapse under Section I – Property Coverages; or

c. Caused by:

(1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

(a) Maintain heat in the building; or

**Page 8 of 22**

WSH 13014767360

Copyright, Insurance Services Office, Inc., 1999

INSURED COPY

HO 00 03 10 00

02  01320

(b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(a) Fence, pavement, patio or swimming pool;

(b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

(c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(d) Pier, wharf or dock;

(3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

(5) Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

(a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

(b) A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

(6) Any of the following:

(a) Wear and tear, marring, deterioration;

(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

(c) Smog, rust or other corrosion, or dry rot;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(g) Birds, vermin, rodents, or insects; or

(h) Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:

(i) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

HO 00 03 10 00
WSH 13014767360

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

Page 9 of 22
02  01321

(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above.

Under 2.b. and c. above, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

b. This peril does not include loss caused by theft:

(1) Committed by an "insured";

(2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

(4) That occurs off the "residence premises" of:

(a) Trailers, semitrailers and campers;

(b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

(c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

Copyright, Insurance Services Office, Inc., 1999
INSUREO COPY

12. **Accidental Discharge Or Overflow Of Water Or Steam**

   a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   b. This peril does not include loss:

      (1) To the system or appliance from which the water or steam escaped;

      (2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing;

      (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

      (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

   c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

   d. Section I — Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

   This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing**

   a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

      (1) Maintain heat in the building; or

      (2) Shut off the water supply and drain all systems and appliances of water.

   However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current**

   This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. **Volcanic Eruption**

   This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I — EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance Or Law**

   Ordinance Or Law means any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion A.1.a. does not apply to the amount of coverage that may be provided for in E.11. Ordinance Or Law under Section I — Property Coverages;

   b. The requirements of which result in a loss in value to property; or

   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This Exclusion A.1. applies whether or not the property has been physically damaged.

2. **Earth Movement**

   Earth Movement means:

   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

HO 00 03 10 00

WSH 13014767360

Copyright, Insurance Services Office, Inc., 1999

INSURED COPY

Page 11 of 22

02  01323

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion A.2. does not apply to loss by theft.

3. **Water Damage**

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

4. **Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

5. **Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War**

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard**

This Exclusion A.7. pertains to Nuclear Hazard to the extent set forth in M. Nuclear Hazard Clause under Section I—Conditions.

8. **Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

9. **Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

HO 00 03 10 00
02  01324

## SECTION I – CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

### B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in 6. above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

### C. Loss Settlement

In this Condition C., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1) The actual cash value of that part of the building damaged; or

(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(2) Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY
HO 00 03 10 00
02 D1326

## H. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

## I. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

## J. Abandonment Of Property

We need not accept any property abandoned by an "insured".

## K. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs E. Appraisal, G. Suit Against Us and I. Loss Payment under Section I – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

## L. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

## M. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

## N. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

## O. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

## P. Policy Period

This policy applies only to loss which occurs during the policy period.

## Q. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

HO 00 03 10 00
WSH 13014767360
Copyright, Insurance Services Office, Inc., 1999
INSURED COPY
Page 15 of 22
02  01327

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

b. Is caused by the activities of an "insured";

c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

a. Is registered for use on public roads or property;

b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

c. Is being:

(1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

(2) Rented to others;

(3) Used to carry persons or cargo for a charge; or

(4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

a. In dead storage on an "insured location";

b. Used solely to service an "insured's" residence;

c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

(1) Being used to assist a handicapped person; or

(2) Parked on an "insured location";

d. Designed for recreational use off public roads and:

(1) Not owned by an "insured"; or

(2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B. 6.a., b., d., e. or h.; or

e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

(1) A golfing facility and is parked or stored there, or being used by an "insured" to:

(a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

Copyright, Insurance Services Office, Inc., 1999

INSURED COPY

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

1. Coverages E and F do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   b. Rented to others;

   c. Used to carry persons or cargo for a charge; or

   d. Used for any "business" purpose.

2. If Exclusion B.1. does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   a. Is stored;

   b. Is a sailing vessel, with or without auxiliary power, that is:

      (1) Less than 26 feet in overall length; or

      (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

   c. Is not a sailing vessel and is powered by:

      (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

         (a) 50 horsepower or less and not owned by an "insured"; or

         (b) More than 50 horsepower and not owned by or rented to an "insured"; or

      (2) One or more outboard engines or motors with:

         (a) 25 total horsepower or less;

         (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

         (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

         (d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

            (i) You declare them at policy inception; or

            (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

         The coverages in (c) and (d) above apply for the policy period.

         Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E — Personal Liability And Coverage F — Medical Payments To Others**

Coverages E and F do not apply to the following:

1. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this Exclusion E.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

   This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion E.2. does not apply to:

      (1) The rental or holding for rental of an "insured location";

HO 00 03 10 00
WSH 13014767360

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

Page 17 of 22
02 D1329

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

### 3. Professional Services

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

### 4. "Insured's" Premises Not An "Insured Location"

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

### 5. War

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

### 6. Communicable Disease

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

### 7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

### 8. Controlled Substance

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions A. "Motor Vehicle Liability", B. "Watercraft Liability", C. "Aircraft Liability", D. "Hovercraft Liability" and E.4. "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

### F. Coverage E – Personal Liability

Coverage E does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in D. Loss Assessment under Section II – Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in a. above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

a. Is also an insured under a nuclear energy liability policy issued by the:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definitions 5.a. or b.

This exclusion also applies to any claim made or suit brought against you or an "insured":

a. To repay; or

b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

G. Coverage F – Medical Payments To Others

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

a. Occurs off the "insured location"; and

b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

3. From any:

a. Nuclear reaction;

b. Nuclear radiation; or

c. Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the insured location".

SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

a. To the extent of any amount recoverable under Section I;

b. Caused intentionally by an "insured" who is 13 years of age or older;

c. To property owned by an "insured";

d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

e. Arising out of:

(1) A "business" engaged in by an "insured";

(2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

(3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

HO 00 03 10 00

WSH 13014767360

Copyright, Insurance Services Office, Inc., 1999

INSURED COPY

Page 19 of 22

02  01331

This exclusion e.(3) does not apply to a "motor vehicle" that:

(a) Is designed for recreational use off public roads;

(b) Is not owned by an "insured"; and

(c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section II — Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1) Is elected by the members of a corporation or association of property owners; and

      (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II — Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II — CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds"; claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

c. With the conduct of suits and attend hearings and trials; and

d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to C. Damage To Property Of Others under Section II — Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

### D. Duties Of An Injured Person — Coverage F — Medical Payments To Others

1. The injured person or someone acting for the injured person will:

    a. Give us written proof of claim, under oath if required, as soon as is practical; and

    b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

### E. Payment Of Claim — Coverage F — Medical Payments To Others

Payment under this coverage is not an admission of liability by an "insured" or us.

### F. Suit Against Us

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

### G. Bankruptcy Of An "Insured"

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

### H. Other Insurance

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

### I. Policy Period

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

### J. Concealment Or Fraud

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

## SECTIONS I AND II — CONDITIONS

### A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

### B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

### C. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

    a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

    b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

HO 00 03 10 00
WSH 13014767350

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

Page 21 of 22
02   01333

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (2) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or Paragraph C. Damage To Property Of Others under Section II – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

   a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, Insurance Services Office, Inc., 1999
INSURED COPY

HO 00 03 10 00
02  01334

HOMEOWNERS
HM 01 40 10 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# HOMEOWNERS AMENDATORY ENDORSEMENT
# INDIANA

**DEFINITIONS**

The following Definitions are added:

"Lead" means lead, or compounds or products containing lead in any form, or a mixture or combination of lead and other dust or particles.

"Asbestos" means asbestos or asbestos products, asbestos fibers, asbestos contained in any product or material, or a mixture or combination of asbestos and other dust or particles.

"Silica" means silicon dioxide (occurring in crystalline, amorphous, and impure forms), silica compounds, or products containing silica in any form, or a mixture or combination of silica and other dust or particles.

**SECTION I – PROPERTY COVERAGES**

**C.  Coverage C – Personal Property**

Under Property Not Covered paragraph 4.c.(2) is replaced by the following:

**4.  Property Not Covered**

We do not cover:

c.  "Motor vehicles".

(2)  We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a)  Used solely to service an "insured's" residence;

(b)  Designed to service a lawn or garden and used primarily to service an "insured's" residence. However, this exception does not apply to an all-terrain vehicle equipped with handle bars and a driver's seat that is straddled;

(c)  Not built or modified after manufacture to exceed a speed of 15 miles per hour on level ground; or

(d)  Designed to assist the handicapped.

**SECTION I – CONDITIONS**

**K.  Mortgage Clause**

In all Forms except HO 00 04, Condition K.2. is replaced by the following:

2.  If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a.  Has notified us of any foreclosure proceeding, change in ownership, change in occupancy or substantial change in risk of which the mortgagee is aware;

b.  Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c.  Submits a signed, sworn statement of loss within 60 days after receiving notice from us to do so. Paragraphs B. Duties After Loss, E. Appraisal, G. Suit Against Us, I. Loss Payment, P. Policy Period and Q. Concealment Or Fraud under Section I – Conditions also apply to the mortgagee.

**SECTION II – LIABILITY COVERAGES**

Paragraph A. is replaced by the following:

**A.  Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1.  Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured". However, damages do not include punitive, treble or exemplary damages, or the fines, penalties, legal fees, costs or expenses associated with such damages; and

2.  Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

WSH 13014767360    02/06/12    31220    INSURED COPY    02  01335

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

Exclusion A.2. is replaced by the following:

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

  a. In dead storage on an "insured location";

  b. Used solely to service an "insured's" residence;

  c. Designed to service a lawn or garden and used primarily to service an "insured's" residence;

  d. Owned by an "insured" provided the "occurrence" takes place off an "insured location" but only if the "motor vehicle" was not built or modified after manufacture to exceed a speed of 15 miles per hour on level ground;

  e. Designed to assist the handicapped;

  f. Designed for recreational use off public roads and:

    (1) Not owned by an "insured"; or

    (2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B.6.a., b., d., e. or h.; or

  g. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

    (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

      (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

      (b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

      (c) Cross public roads at designated points to access other parts of the golfing facility; or

    (2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence;

### E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others

The following Exclusion is added:

"Lead", "Asbestos" and "Silica"

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "personal and advertising injury" arising directly or indirectly, in whole or in part, out of:

  a. Any actual, alleged, threatened or suspected inhalation of, ingestion of, absorption of, contact with, exposure to, existence of, presence of, or use of, including the process of installation, maintenance and/or removal of "lead", "asbestos" or "silica".

  b. Any failure to warn, supervise, instruct, or recommend, to others, any action or inaction that should or should not be followed when physical contact is made with "lead", "asbestos" or "silica".

  c. Any loss, cost or expense arising out of any:

    (1) Request, demand or order that an "insured" or others test for, monitor, clean up, remove, dispose of, remediate, contain, treat, detoxify, neutralize, abate, mitigate, or in any way respond to, or assess the effects of "lead", "asbestos" or "silica".

    (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, disposing of, remediating, containing, treating, detoxifying, neutralizing, abating, mitigating, or in any way responding to, or assessing the effects of "lead", "asbestos" or "silica".

### F. Coverage E – Personal Liability

The following Exclusion is added:

Coverage E does not apply to:

7. Any punitive, treble, or exemplary damages, or the fines, sanctions, penalties, legal fees, costs or expenses associated with such damages.

## SECTION II – CONDITIONS

### C. Duties After "Occurrence"

The following Duty is added under Condition C. Duties After "Occurrence":

7. As often as we reasonably require, submit to examination under oath, while not in the presence of another "insured", and sign the same.

## SECTIONS I AND II—CONDITIONS

The following Conditions are added:

### Two or More Named Insureds

When there are two or more named insureds, each acts for all to cancel or change this policy.

### Warranty

I/We apply to Western Reserve Mutual Casualty Company, Lightning Rod Mutual Insurance Company and Sonnenberg Mutual Insurance Company (Company) for a policy of insurance on the basis of the statements made in the application for insurance. I/We warrant that all statements made on the application for insurance are true and accurate. I/We understand that the Company relied upon the truth and accuracy of the statements contained on the application in determining whether to issue a policy of insurance. I/We understand and agree that the statements contained on the application are WARRANTIES and shall be INCORPORATED into the policy of insurance the Company issues. I/We agree that any such policy shall be null and void from inception if such information is false, misleading or would materially affect acceptance of the risk by the Company.

All other provisions of this policy apply.

WSH 13014767360    02/06/12    31220    INSURED COPY                    02  01338

**HOMEOWNERS**
**HO 01 13 03 11**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – INDIANA

**SECTION I – PROPERTY COVERAGES**

**E. Additional Coverages**

**11. Ordinance Or Law**

Paragraph c. is replaced by the following:

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exception applies whether or not the irritant or contaminant has any function with respect to your property or "business".

(This is Additional Coverage C.11. in Form HO 00 04 and D.10. in Form HO 00 06.)

**SECTION I – PERILS INSURED AGAINST**

If this endorsement is attached to Form HO 00 03, the following is added to Paragraph A.2.c.(6)(e):

In this provision, any reference to pollutants applies whether or not the irritant or contaminant has any function with respect to your property or "business".

That same provision is added to the following form or endorsements if attached to the policy:

| If one or more of the following is attached: | The above provision is added to: |
|---|---|
| HO 00 05 | Paragraph A.2.e.(5) |
| HO 04 14 | Paragraph 2.b.(9)(e) |
| HO 05 24 | Paragraph 2.j.(5) |
| HO 17 31 | Paragraph 3.j.(5) |
| HO 17 32 | Paragraph 2.c.(6)(e) |

**SECTION I – EXCLUSIONS**

**1. Ordinance Or Law**

The following is added to Paragraph c.:

This Exclusion 1.c. applies whether or not the irritant or contaminant has any function with respect to your property or "business".

(This is Exclusion A.1.c. in Forms HO 00 03 and HO 00 05.)

**SECTION II – EXCLUSIONS**

**F. Coverage E – Personal Liability**

Paragraph 4. is replaced by the following:

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law.

This Exclusion F.4. also applies to "bodily injury" to any person eligible to receive any benefits required to be provided by an "insured" under the Indiana Workers' Compensation statutes arising out of the failure of the "insured" to exact from a contractor or subcontractor a certificate from the workers' compensation board showing that the contractor or subcontractor has complied with the applicable workers' compensation insurance requirements;

**G. Coverage F – Medical Payments To Others**

Paragraph 2. is replaced by the following:

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law.

---

© Insurance Services Office, Inc., 2010

WSH 13014767360          02/08/12          31220          **INSURED COPY**                    02  01339

This Exclusion G.2. also applies to "bodily injury" to any person eligible to receive benefits required to be provided by an "insured" under the Indiana Workers' Compensation statutes arising out of the failure of the "insured" to exact from a contractor or subcontractor a certificate from the workers' compensation board showing that the contractor or subcontractor has complied with the applicable workers' compensation insurance requirements;

## SECTIONS I AND II — CONDITIONS

### C. Cancellation

Paragraph 2.c. is replaced by the following:

    c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

        (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

        (2) If the risk has changed substantially since the policy was issued.

        This can be done by letting you know at least 20 days before the date cancellation takes effect.

Paragraph 2.d. is deleted.

Condition **D. Nonrenewal** is replaced by the following:

### D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 20 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

The following condition is added:

### H. Notice To Agent

Your notice to our agent will be deemed to be notice to us.

All other provisions of this policy apply.

© Insurance Services Office, Inc., 2010

HO 01 13 03 11

WSH 13014787360

HOMEOWNERS
HO 16 10 01 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WATER EXCLUSION ENDORSEMENT

## SECTION I – EXCLUSIONS

**A.3. Water Damage is replaced by the following:**

**3. Water**

This means:

a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

b. Water which:

(1) Backs up through sewers or drains; or

(2) Overflows or is otherwise discharged from a sump, sump pump or related equipment;

c. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

d. Waterborne material carried or, otherwise moved by any of the water referred to in A.3.a. through A.3.c. of this Exclusion.

This Exclusion (A.3.) applies regardless of whether any of the above, in A.3.a. through A.3.d., is caused by an act of nature or is otherwise caused.

This Exclusion (A.3.) applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in A.3.a. through A.3.d., is covered.

All other provisions of this policy apply.

© Insurance Services Office, Inc., 2008

INSURED COPY

WSH 13014767360

POLICY NUMBER:     WSH 13014767360

**HOMEOWNERS**
**HO 04 27 04 02**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

### FOR USE WITH FORMS HO 00 03 AND HO 00 05

### SCHEDULE*

| These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims-made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|
| 1. | Section I – Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria | $10,000 |
| 2. | Section II – Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria | $50,000 |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. | | |

**DEFINITIONS**

The following definition is added:

"Fungi"

    **a.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

    **b.** Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**SECTION I – PROPERTY COVERAGES**

**E. Additional Coverages**

    Paragraph 10.k.(2)(d) is deleted in Form HO 00 05 only.

The following Additional Coverage is added:

    **13. "Fungi", Wet Or Dry Rot, Or Bacteria**

        **a.** The amount shown in the Schedule above is the most we will pay for:

            (1) The total of all loss payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

            (2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

            (3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

            (4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

        **b.** The coverage described in 13.a. only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

HO 04 27 04 02

© ISO Properties, Inc., 2001

Page 1 of 3

WSH 13014767380

c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

(1) Number of locations insured under this endorsement; or

(2) Number of claims-made.

d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

**SECTION I – PERILS INSURED AGAINST**

In Form HO 00 03:

**A. Coverage A – Dwelling And Coverage B – Other Structures**

Paragraph 2.c.(5) is deleted and replaced by the following:

(5) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 2.c.(6)(c) is deleted and replaced by the following:

(c) Smog, rust or other corrosion;

**B. Coverage C – Personal Property**

**12. Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph b.(4) is deleted and replaced by the following:

(4) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form HO 00 05:

**A. Under Coverages A, B and C:**

Paragraph 2.d. is deleted and replaced by the following:

d. Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 2.e.(3) is deleted and replaced by the following:

(3) Smog, rust or other corrosion;

**SECTION I – EXCLUSIONS**

Exclusion A.10. is added.

**10. "Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

a. When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

b. To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

**SECTION I – CONDITIONS**

Condition P. Policy Period is deleted and replaced by the following:

**P. Policy Period**

This policy applies to loss or costs which occur during the policy period.

© ISO Properties, Inc., 2001
INSURED COPY
HO 04 27 04 02
02 01344

## SECTION II – CONDITIONS

Condition A. **Limit Of Liability** is deleted and replaced by the following:

### A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims-made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section II — Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

1. Number of locations insured under the policy to which this endorsement is attached;

2. Number of persons injured;

3. Number of persons whose property is damaged;

4. Number of "insureds"; or

5. Number of "occurrences" or claims-made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in A. Limit Of Liability of this endorsement, Condition B. **Severability Of Insurance** is deleted and replaced by the following:

### B. Severability Of Insurance

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II — Conditions, A. Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

**HO 04 27 04 02**

WSH 13014767360     02/08/12     31220

© ISO Properties, Inc., 2001
INSURED COPY

**Page 3 of 3**

02   0134S

WSH 13014767360     02/06/12     31220     INSURED COPY                    02  01346

WSH 13014767360

**HOMEOWNERS**
**HO 04 96 10 00**

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

   **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

   **2.** Any other activity engaged in for money or other compensation, except the following:

     **a.** One or more activities:

      **(1)** Not described in **b.** through **d.** below; and

      **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

     **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

     **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

     **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

   **1.** That an "insured" engages in for money or other compensation; and

   **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

   the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

   **1.** Described in **A.2.** above, and

   **2.** Engaged in for money by a single "insured";

   may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

   **1.** Does not provide:

     **a.** Section II coverages. This is because a "business" of an "insured" is excluded under E.2. of Section II – Exclusions;

     **b.** Coverage, under Section I, for other structures from which any "business" is conducted; and

   **2.** Limits Section I coverage, under Coverage C – Special Limits of Liability, for "business" property:

     **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category h. (e. in Form HO 00 08) imposes that limit on "business" property on the "residence premises";

     **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category i. (f. in Form HO 00 08) imposes that limit on "business" property away from the "residence premises". Category i. does not apply to property described in Categories j. and k. (g. and h. respectively in Form HO 00 08).

---

HO 04 96 10 00       Copyright, Insurance Services Office, Inc., 1999       Page 1 of 1

WSH 13014767360     02/06/12     31220     INSURED COPY       02  01347

WSH 13014787380

WSH 13014787360

HOMEOWNERS
HO 04 16 10 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).

Copyright, Insurance Services Office, Inc., 1999

WSH 13014787360      02/06/12      31220      INSURED COPY      02  01349

WSH 13014767360

POLICY NUMBER:    WSH 13014767360

HOMEOWNERS<br>HM 01 36 10 11

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HOMEOWNERS ENHANCEMENT
## WITH FUNCTIONAL REPLACEMENT COST LOSS SETTLEMENT
### Forms HO 00 03 and HO 00 05

**SECTION I – PROPERTY COVERAGES**

**1. Functional Replacement Cost Loss Settlement**

**DEFINITIONS**

The following **Definition** is added:

"Functional replacement cost" means the amount which it would cost to repair or replace the damaged building with less costly common construction materials and methods which are functionally equivalent to obsolete, antique or custom construction materials and methods used in the original construction of the building.

**SECTION I - CONDITIONS**

**C. Loss Settlement**

Paragraph 2. is replaced by the following:

2. Buildings covered under Coverage A or B:

a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the "functional replacement cost" of the building immediately before the loss and you contract for repair or replacement of the damaged building for the same use, within 180 days of the damage unless we and you otherwise agree, we will pay, after application of any deductible, the lesser of the following amounts:

(1) The limit of liability under this policy that applies to the building; or

(2) The necessary amount actually spent to repair or replace the damaged building on a "functional replacement cost" basis.

b. If you do not make claim under 2.a. above, we will pay, after application of any deductible, the least of the following amounts:

(1) The limit of liability under this policy that applies to the building;

(2) The actual cash value of the damaged part of the building; or

(3) The amount which it would cost to repair or replace the damaged building on a "functional replacement cost" basis.

c. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the "functional replacement cost" of the building immediately before the loss, we will pay that proportion of the cost to repair or replace that part of the building damaged:

(1) After application of any deductible; and

(2) Without deduction for depreciation;

which the total amount of insurance in this policy on the damaged building bears to 80% of the "functional replacement cost" of the building, but not more than the limit of liability under this policy that applies to the building.

d. To determine the amount of insurance required to equal 80% of the "functional replacement cost" of the building immediately before the loss, do not include the value of:

(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(2) Those supports in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

e. If the actual cash value of the damage is less than the "functional replacement cost" then:

(1) We will pay no more than the actual cash value of the damage until replacement is complete. Once replacement is complete, we will settle the loss according to the provisions of 2.a. and c. above.

However, if the cost to functionally repair the damage is both:

WSH 13014767360

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2,500;

we will settle the loss according to the provisions of 2.a. and c. above whether or not replacement is complete.

(2) You may disregard the "functional replacement cost" loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis.

You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days of the date of loss.

2. **Personal Property Replacement Cost**

Section I — Conditions, C. Loss Settlement, Paragraph 1. is replaced by Paragraphs A., B., and C. as follows:

A. **Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of loss:

   a. Coverage C; and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments trimmed with fur or consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical instruments and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens or pencils, flasks, smoking implements or jewelry;

f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment;

g. Sports equipment meaning bicycles, archery, tennis and similar equipment, but excluding watersports equipment;

h. Guns and related equipment;

i. Carpenters tools; and

j. Mechanics tools.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

B. **Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

C. **Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in A. above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage C, if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in A.2.a. - j. above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in A. above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this provision provided you notify us of your intent to do so within 180 days after the date of loss.

## 3. Coverage C — Refrigerated Property Coverage

We insure, for up to $500, covered personal property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

a. "Loss of power" to the refrigeration unit. "Loss of power" must be caused by damage to generating equipment or transmitting equipment; or

For purpose of this coverage, "Loss of power" means the complete or partial interruption of electric power due to conditions beyond an "insured's" control.

b. Mechanical failure of the unit which stores the property.

Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

This endorsement does not increase the limit of liability for Coverage C.

The Power Failure exclusion does not apply to this coverage.

No deductible applies to this coverage.

## 4. Coverage C - Special Limits Of Liability

Under 3. Special Limits of Liability, the limits for categories a. - i. are replaced by the following:

a. $500 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

b. $2,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

c. $2,000 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $2,000 on trailers or semitrailers not used with watercraft of all types.

e. $5,000 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $4,000 for loss by theft of firearms and related equipment.

g. $5,000 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $5,000 on property, on the "residence premises" used primarily for "business" purposes.

i. $1,000 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories j. and k.

In Form HO 00 05 and endorsement HO 17 31, categories e., f., and g. are covered for loss by theft, misplacing or losing.

## 5. Coverage D — Loss Of Use

Paragraph 3. is replaced by the following:

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in 1. Additional Living Expense and 2. Fair Rental Value above for no more than 30 days.

## 6. Additional Coverages

### 4. Fire Department Service Charge

The limit stated in your policy for this Additional Coverage is increased to $1,000.

### 6. Credit Card, Electronic Fund Transfer Card or Access Device, Forgery And Counterfeit Money

The limit stated in your policy for this Additional Coverage is increased to $2,000.

The following Additional Coverages are added:

### Debris Removal

We will pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of your tree(s) felled by a Peril Insured Against named under Coverage C when there is no damage to a covered structure. The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree. No deductible applies to this coverage.

**Lock or Garage Door Remote Transmitter**

We will pay up to $500 to rekey, reprogram or replace the house locks to your dwelling insured under Coverage A if an "insured's" keys are lost or stolen and/or to replace or reprogram your garage door remote transmitter to your private garage if an "insured's" remote transmitter is lost or stolen. The most we will pay is $500. If replacement is required, we will replace the locks or remote transmitter with items of like kind and quality. No deductible applies to this coverage.

**Fire Extinguisher Coverage**

We will pay the expenses you incur to recharge or replace a fire extinguisher after it is used to defend a fire covered by this policy at the "residence premises". If replacement is required, we will replace the fire extinguisher with an item of like kind and quality. No deductible applies to this coverage.

**SECTION II – LIABILITY COVERAGES**

1. **Extended "Motor Vehicle Liability" Coverage For Golf Carts**

   Coverages E and F are extended to a motorized golf cart when used to play golf on a golf course, or while the golf cart is being driven to or from a golf course.

2. **Extended "Watercraft Liability"**

   Coverages E and F are extended to watercraft owned by, rented to or operated by an "insured", which are powered by inboard, outboard, or inboard/outdrive motors not exceeding 50 horsepower and which are less than 26 feet in length.

3. **Personal Injury Coverage**

   Personal Injury Coverage is added to Coverage E – Personal Liability:

   If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

   1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

   2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

With respect to this Personal Injury Coverage, the following definitions are added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication, in any manner, of material that violates a person's right of privacy.

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

However, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**SECTION II – EXCLUSIONS**

With respect to this Personal Injury Coverage, Section II – Exclusions is deleted and replaced by the following:

This insurance does not apply to:

1. "Personal injury":

   a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

   b. Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

   c. Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   d. Arising out of a criminal act committed by or at the direction of an "insured";

   e. Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership maintenance or use of the premises;

   f. Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

g. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

This exclusion does not apply to:

(1) The rental or holding for rental of an "insured location";

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

h. Arising out of civic or public activities performed for pay by an "insured";

i. To you or an "insured" as defined under Definition 5.a. or 5.b.;

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

(1) Repay; or

(2) Share damages with;

another person who may be obligated to pay damages because of "personal injury" to an "insured"; or

j. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

k. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria.

2. Any loss, cost or expense arising out of any:

a. Request, demand or order that an "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants, "fungi", wet or dry rot, or bacteria; or

b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants, "fungi", wet or dry rot, or bacteria.

**SECTION II – ADDITIONAL COVERAGES**

With respect to this Personal Injury Coverage, Paragraph D. Loss Assessment is deleted and replaced by the following:

**D. Loss Assessment**

We will pay up to $1000 for your share of loss assessment charged against you, as an owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of "personal injury" not excluded under this endorsement.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of "personal injury".

**SECTION II – CONDITIONS**

With respect to this Personal Injury Coverage, Section II – Condition I. Policy Period does not apply and Conditions A. Limit Of Liability, B. Severability Of Insurance and C. Duties After "Occurrence" are deleted and replaced by the following:

**A. Limit Of Liability**

Our total liability under "Personal Injury" Coverage for all damages resulting from any one offense will not be more than the limit of liability shown in the Declarations for Coverage E. This limit is the same regardless of the number of "insureds", claims made or suits brought.



**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

**C. Duties After Offense**

In the event of a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and "named insured";

   b. Reasonably available information on the time, place and circumstances of the offense; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the offense;

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "personal injury".

All other provisions of this policy apply.

**HM 01 36 10 11**   Includes copyrighted material of Insurance Services Office, Inc., with its permission   **Page 6 of 6**

WSH 13014767350   02/06/12   31220   **INSURED COPY**   02   01356

# Wayne County Receipt of Transaction
## Receipt #    2017006712

TIM NEAL, CLERK
Clerk of Court
Wayne County, Ohio

**Received From:**
ORILLE, SCOTT JOSEPH
1301 EAST NINTH ST.
SUITE 1900
CLEVELAND, OH 44114

**On Behalf Of:**

On:  3/1/17   3:58 pm
Transaction # 100287579

**Non-Case Fees**

| Comments: | Payment for Filing Fees |
| | e-File Confirmation # |

| Fee Description | Fee | Prior Paid | Waived | Due | Paid | Balance |
|---|---|---|---|---|---|---|
| (REFUNDCP) REFUND COMMON PLEAS | 313.00 | 0.00 | 0.00 | 313.00 | 313.00 | 0.00 |
| **Total:** | **313.00** | **0.00** | **0.00** | **313.00** | **313.00** | **0.00** |

**PAYMENTS**

| Payment Type | Reference | | Amount | Refund | Overage | Change | Net Amount |
|---|---|---|---|---|---|---|---|
| CC | ~AMEX XXXX3005~ Authorization Code:7dc4b508 | OK | 313.00 | 0.00 | 0.00 | 0.00 | 313.00 |
| CC | | | 313.00 | 0.00 | 0.00 | 0.00 | 313.00 |

| SUB TOTAL | $313.00 |
|---|---|
| CONVENIENCE FEE | $9.39 |
| CREDIT CARD CHARGE | $322.39 |
| REMAINING BALANCE | $0.00 |

I AGREE TO PAY THE ABOVE CREDIT CARD AMOUNT
ACCORDING TO ISSUER AGREEMENT INCLUDING THE
CREDIT CARD CONVENIENCE FEE.  IF YOU PAID ONLINE
OR OVER THE PHONE, YOU MAY HAVE BEEN CHARGED

OK

AMEX XXXX3005

| | Payments Total: | 313.00 | 0.00 | 0.00 | 0.00 | 313.00 |
|---|---|---|---|---|---|---|

**CASE GRAND TOTAL**

| | Waived | Total Fee | Paid | Balance |
|---|---|---|---|---|

Filed on 03/02/2017 09:35 AM in Wayne County, Ohio



CERTIFIED MAIL

TIM NEAL
WAYNE COUNTY CLERK OF COURTS
107 WEST LIBERTY STREET
WOOSTER, OH 44691



U.S. POSTAGE >> PITNEY BOWES

ZIP 44691
02 1W
0001395491 MAR 02 2017
$ 007.88⁰

91 7199 9991 7034 6728 5835

GREENFIELD BANKING COMPANY
1920 NORTH STATE ST.
GREENFIELD, IN 46140

Case #2017 CVC-H 000097



CERTIFIED MAIL

**TIM NEAL**
YNE COUNTY CLERK OF COURTS
107 WEST LIBERTY STREET
WOOSTER, OH 44691



ZIP 44691 **$ 007.88**
02 1W
0001395491 MAR 02 2017

91 7199 9991 7034 6728 5828

MR. WILLIAM COLLINS
101 WILLOW ROAD
GREENFIELD, IN 46140

Case #2017 CVC-H 000097




TIM NEAL
'NE COUNTY CLERK OF COURTS
107 WEST LIBERTY STREET
WOOSTER, OH 44691

**CERTIFIED MAIL**

U.S. POSTAGE >> PITNEY BOWES

ZIP 44691    **$ 007.88**
02 1W
0001395491 MAR 02 2017

91 7199 9991 7034 6728 5811

REVERSE MORTGAGE SOLUTIONS, INC.
C/O STATUTORY AGENT: CT CORP. SYSTEM MR.
CHRIS RICKARD
4400 EASTON COMMONS WAY SUITE 125
COLUMBUS, OH 43219
Case #2017 CVC-H 000097

## Wayne County Receipt of Transaction
### Receipt #    2017006733

TIM NEAL, CLERK
Clerk of Court
Wayne County, Ohio

**Received From:**

SCOTT JOSEPH ORILLE
1301 EAST NINTH ST SUITE 1900
CLEVELAND, OH 44114

**On Behalf Of:**

WESTERN RESERVE MUTUAL CASUALTY COMPANY
1685 CLEVELAND ROAD
WOOSTER, OH 44691

On:  3/2/17   9:22 am
Transaction # 100287606

| CaseNumber  2017 CVC-H 000097 | | | | | | |
|---|---|---|---|---|---|---|
| **Fee Description** | **Fee** | **Prior Paid** | **Waived** | **Due** | **Paid** | **Balance** |
| (CPCVDEP) CIVIL DEPOSIT | 36.00 | 0.00 | 0.00 | 36.00 | 36.00 | 0.00 |
| (CPCVCO) CIVIL COMPLAINT FILED | 277.00 | 0.00 | 0.00 | 277.00 | 277.00 | 0.00 |
| **Total:** | **313.00** | **0.00** | **0.00** | **313.00** | **313.00** | **0.00** |

| PAYMENTS | | | | | | |
|---|---|---|---|---|---|---|
| **Payment Type** | **Reference** | | **Amount** | **Refund** | **Overage** | **Change** | **Net Amount** |
| CHECK | 091816 | OK | 313.00 | 0.00 | 0.00 | 0.00 | 313.00 |
| | | **Payments Total:** | **313.00** | **0.00** | **0.00** | **0.00** | **313.00** |

| CASE GRAND TOTAL | | | | |
|---|---|---|---|---|
| | **Waived** | **Total Fee** | **Paid** | **Balance** |
| | $0.00 | $313.00 | $313.00 | $0.00 |

Page 1 of 1

**IN THE COURT OF COMMON PLEAS
WAYNE COUNTY, OHIO**

| | | |
|---|---|---|
| **WESTERN RESERVE MUTUAL** | ) | CASE NO.: |
| **CASUALTY COMPANY**, | ) | |
| | ) | JUDGE |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **REVERSE MORTGAGE SOLUTIONS,** | ) | **PRAECIPE FOR SERVICE OF COMPLAINT** |
| **INC., ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

**To the Wayne County Clerk of Courts:**

Please serve the Complaint with Summons **by U.S. certified mail, return receipt requested,**

upon the following Defendants at the following address:

REVERSE MORTGAGE SOLUTIONS, INC.
C/O Statutory Agent:
CT Corporation System
Mr. Chris Rickard
4400 Easton Commons Way, Suite 125
Columbus, OH 43219,

MR. WILLIAM COLLINS
101 Willow Road
Greenfield, Indiana 46140

GREENFIELD BANKING COMPANY
1920 North State St.
Greenfield, IN 46140-0000

Respectfully submitted,

/s/David L. Jarrett
**DAVID L. JARRETT (0061532)**
Dave_Jarrett@wrg-ins.com
**Western Reserve Group**
1685 Cleveland Road
Wooster, OH 44691-0036
(T) 1-800-362-0426 ext. 3515

**Attorneys for Plaintiff**

/s/Scott J. Orille
JOHN G. FARNAN (0038558)
Jfarnan@westonhurd.com
MONICA L. FRANTZ (0090878)
Mfrantz@westonhurd.com
SCOTT J. ORILLE (0069192)
SOrille@westonhurd.com
WESTON HURD, LLP
The Galleria & Towers at Erieview
1301 East Ninth Street, Suite 1900
Cleveland, OH 44114
Telephone: 216-241-6602
Facsimile: 216-621-8369
**Attorneys for Plaintiff**

Filed on 03/02/2017 09:32 AM in Wayne County, Ohio

**WAYNE COUNTY COMMON PLEAS COURT**
**CIVIL DIVISION**

107 WEST LIBERTY STREET
WOOSTER, OHIO 44691
(330) 287-5590
**SUMMONS**

WESTERN RESERVE MUTUAL CASUALTY
COMPANY

CASE NO. 2017 CVC-H 000097

      Plaintiff

vs.

REVERSE MORTGAGE SOLUTIONS, INC., et al
      Defendant

To:  **GREENFIELD BANKING COMPANY**
    1920 NORTH STATE ST.
    GREENFIELD, IN 46140

To the above named defendant(s):

    You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) had been filed against you in this court by the plaintiff(s) named herein. You are required to serve upon the plaintiff's attorney, or upon the plaintiff if he/she has no attorney of record, a copy of your answer to the complaint with 28 days after service of this summons upon you. Said answer must be filed with this court within three days after service on plaintiff's attorney.

The name and address of the plaintiff's attorney is as follows:
      JOHN GERARD FARNAN
      THE TOWER AT ERIEVIEW
      1301 E. 9TH ST., STE 1900
      CLEVELAND, OH 44114-1862

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.



By: _____
Deputy Clerk

3/2/2017

SummonsCivil

<strong>Filed on 03/02/2017 09:31 AM in Wayne County, Ohio</strong>

## WAYNE COUNTY COMMON PLEAS COURT
### CIVIL DIVISION

107 WEST LIBERTY STREET
WOOSTER, OHIO 44691
(330) 287-5590
### SUMMONS

WESTERN RESERVE MUTUAL CASUALTY
COMPANY

      Plaintiff

vs.

REVERSE MORTGAGE SOLUTIONS, INC., et al

      Defendant

CASE NO. 2017 CVC-H 000097

To: **REVERSE MORTGAGE SOLUTIONS, INC.**
C/O STATUTORY AGENT: CT CORP. SYSTEM MR. CHRIS RICKARD
4400 EASTON COMMONS WAY SUITE 125
COLUMBUS, OH 43219

To the above named defendant(s):

      You are hereby summoned that a complaint (a copy of which is hereto attached and made a part

hereof) had been filed against you in this court by the plaintiff(s) named herein. You are required to

serve upon the plaintiff's attorney, or upon the plaintiff if he/she has no attorney of record, a copy of

your answer to the complaint with 28 days after service of this summons upon you. Said answer must

be filed with this court within three days after service on plaintiff's attorney.

The name and address of the plaintiff's attorney is as follows:
      JOHN GERARD FARNAN
      THE TOWER AT ERIEVIEW
      1301 E. 9TH ST., STE 1900
      CLEVELAND, OH 44114-1862
If you fail to appear and defend, judgment by default will be taken against you for the relief demanded
in the complaint.



By: _____
      Deputy Clerk

3/2/2017

SummonsCivil

Filed on 03/02/2017 09:32 AM in Wayne County, Ohio

**WAYNE COUNTY COMMON PLEAS COURT**
**CIVIL DIVISION**

107 WEST LIBERTY STREET
WOOSTER, OHIO 44691
(330) 287-5590
**SUMMONS**

WESTERN RESERVE MUTUAL CASUALTY
COMPANY

CASE NO. 2017 CVC-H 000097

      Plaintiff

vs.

REVERSE MORTGAGE SOLUTIONS, INC., et al

      Defendant

To: **MR. WILLIAM COLLINS**
    101 WILLOW ROAD
    GREENFIELD, IN 46140

To the above named defendant(s):

      You are hereby summoned that a complaint (a copy of which is hereto attached and made a part

hereof) had been filed against you in this court by the plaintiff(s) named herein. You are required to

serve upon the plaintiff's attorney, or upon the plaintiff if he/she has no attorney of record, a copy of

your answer to the complaint with 28 days after service of this summons upon you. Said answer must

be filed with this court within three days after service on plaintiff's attorney.

The name and address of the plaintiff's attorney is as follows:

        JOHN GERARD FARNAN
        THE TOWER AT ERIEVIEW
        1301 E. 9TH ST., STE 1900
        CLEVELAND, OH 44114-1862

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded
in the complaint.



By: _____

      Deputy Clerk

3/2/2017

SummonsCivil



**UNITED STATES POSTAL SERVICE**

Date Produced: 03/13/2017

WAYNE COUNTY CLERK OF COURTS WOOSTER:

The following is the delivery information for Certified Mail™ item number 7199 9991 7034 6728 5835. Our records indicate that this item was delivered on 03/06/2017 at 12:14 p.m. in GREENFIELD, IN 46140. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 1395491 4822667417-cvc-97



**UNITED STATES
POSTAL SERVICE**

Date Produced: 03/13/2017

WAYNE COUNTY CLERK OF COURTS WOOSTER:

The following is the delivery information for Certified Mail™ item number 7199 9991 7034 6728 5811. Our records indicate that this item was delivered on 03/06/2017 at 11:42 a.m. in COLUMBUS, OH 43219. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 1395491 4822667417-cvc-97


**UNITED STATES**
**POSTAL SERVICE.**

Date Produced: 03/13/2017

WAYNE COUNTY CLERK OF COURTS WOOSTER:

The following is the delivery information for Certified Mail™ item number 7199 9991 7034 6728 5828. Our records indicate that this item was delivered on 03/06/2017 at 04:21 p.m. in GREENFIELD, IN 46140. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 1395491 4822667417-cvc-97